**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CRIMINAL ACTION NO. 5:18-CR-00035-TBR**

UNITED STATES OF AMERICA                                        PLAINTIFF

v.

DERRICK STARKS                                                          DEFENDANT

**MEMORANDUM OPINION & ORDER**

Before the Court are two motions: Starks's Motion for Compassionate Release, DN 36, and Starks's Motion for Default Judgment, DN 38. The motions are ripe. For the reasons stated below: The Motion for Compassionate Release, DN 36, is DENIED. The Motion for Default Judgment, DN 38, is DENIED.

## I.    Background

Derrick Starks is before the Court *pro se* seeking compassionate release due to coronavirus. [DN 36]. In April 2019, the Court entered judgment as to Starks on one count of being a felon in possession of a firearm. [DN 29]. Starks was sentenced to a thirty (30) month term of imprisonment. *Id.* The Bureau of Prisons (BOP) website indicates that Starks is a 45-year-old Black male currently housed at FMC Lexington in Lexington, Kentucky with a release date of July 29, 2021.[1] Starks seeks compassionate release on the basis of coronavirus and his medical issues including glaucoma, asthma, and chronic obstructive pulmonary disease (COPD). Starks argues that his conditions make him particularly vulnerable to coronavirus and because of decreased access to medical visits, he has been unable to receive regular treatment for his conditions. *Id.* at 17-19. Specifically, Starks says that he has "advancing glaucoma in both eyes"

---

[1] *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/byname.jsp (under First Name, input "Derrick," and then under Last Name, input "Starks") (last visited March 23, 2021).

1

that may be a rare form, and "[h]is vision continues to suffer." *Id.* at 17. Starks also says that he has been unable to receive prescribed asthma treatments due to quarantine. *Id.* Starks contends that the staff at FMC Lexington have done a poor job of implementing safety measures like testing, mask-wearing, social distancing, and sanitizing. *Id.* at 7-9.

In response, the United States argues that Starks has not presented extraordinary and compelling reasons that warrant Starks's release, and Starks would be just as if not more likely to contract coronavirus in McCracken County versus in FMC Lexington. [DN 40 at 2-6]. The United States also contends that "Starks's medical records demonstrate that his medical conditions are well controlled, mostly without medication." *Id.* at 3. Further, the government states that glaucoma is not a risk factor for coronavirus. *Id.* The government then addresses Starks's hypertension and sickle-cell disease, although these are not medical issues that Starks raises in his motion. *Id.* at 3-4. As to whether Starks has presented extraordinary and compelling reasons for compassionate release, the government's key arguments are that Starks's medical conditions are well-controlled, and there are medical professionals available to care for Starks if needed. *Id.* at 2-6.

The government also contends that Starks's release would be improper after considering the factors of 18 U.S.C. § 3553(a) because of the nature and circumstances of Starks's offenses. *Id.* at 6-7. The government explains that Starks was convicted and imprisoned due to possessing and selling a firearm as a convicted felon, and Starks also sold a quantity of methamphetamine along with the firearm. *Id.* The United States also argues that Starks's history and characteristics weigh against relief because Starks has previously been convicted of First-Degree Trafficking in a Controlled Substance—Cocaine, more than one instance of assault, flagrant non-support, and alcohol-related convictions. *Id.* at 7. In sum, the government contends that granting Starks's compassionate release "would not reflect the seriousness of Starks's crimes, deter him from

2

criminal activity, or protect the public." *Id.* (citing 18 U.S.C. § 3553(a)(2)). The United States also claims that Starks is currently charged with First-Degree Trafficking in a Controlled Substance—Methamphetamine in the Graves Circuit Court, and that on that charge, Starks "appears to be the subject of a bench warrant for his arrest." *Id.* at 2, 7. The government says that it if this Court grants compassionate release, it is assumed that Starks will be taken into state custody. *Id.* at 2.

Starks replied to the government's response. [DN 45]. Starks recounts the circumstances of incarceration at FMC Lexington, which he claims include little to no social distancing, overcrowding, poor sanitation, and other poor handling of the coronavirus by FMC Lexington staff. *Id.* at 2-5. Starks also points out that the government failed to address the fact that Starks has COPD in its response. *Id.* at 6-7. Starks contends that he has been unable to receive regular breathing treatments for COPD due to coronavirus, and this is "violative of Petitioner's rights, [and] indicative of FMC Lexington's inability to meet the challenges of COVID [while] still providing care and treatment for previously identified medical needs." *Id.* at 7. Moreover, Starks argues that the housing unit used for quarantining sick inmates includes rooms with black mold, and Starks would be subject to these conditions if he contracted coronavirus. *Id.* at 4.

Starks also challenges the government's arguments that compassionate release should be denied when considering the § 3553(a) factors. *Id.* at 9-10. Starks says that his thirty-month sentence "does not support an assertion that [his] crime nor prior criminal history [disqualify] him from relief." *Id.* at 9. Starks further states, "[h]ad the crime been more serious and/or the criminal history more extensive under the points-based assessment, [his] sentence would reflect such factors." *Id.* Starks also challenges the government's argument that his history and characteristics do not support compassionate release. *Id.* Starks claims that in the instances of assault the government refers to, in one instance, Starks was not the aggressor, and in the other instance, the

3

injury was inadvertent. *Id.* at 9-10. He also claims that the other parties in both instances corroborate his accounts of the events. *Id.* at 10. Finally, Starks says that there is no pending charge in the Graves Circuit Court because he sought and received assistance from a federal officer at FMC Lexington who helped Starks get the detainer removed by default through the Interstate Agreement on Detainers Act. *Id.*

## II.    Motion for Default

The government did not timely respond to Starks's motion for compassionate release. Starks moved for default judgment as to his compassionate release motion. [DN 38]. Then, the government filed a Motion for Extension of Time to File a Response [DN 39]. The Court granted the government's motion. [DN 43]. Because the Court generally prefers to consider matters on the merits rather than to dismiss them because of procedural issues, Starks's Motion for Default Judgment is denied. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

## III.   Motion for Compassionate Release

### a.   Standards

The Sixth Circuit recently articulated the standards a district court uses in evaluating a compassionate release motion:

> The compassionate release statute allows the district court to reduce a defendant's sentence if it finds that "extraordinary and compelling reasons" warrant a reduction; that a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and that the § 3553(a) factors, to the extent they apply, support a reduction. 18 U.S.C. § 3582(c)(1)(A); see *United States v. Ruffin*, 978 F.3d 1000, 1004–05 (6th Cir. 2020). But where an inmate files the motion for compassionate release, "district courts need not consider" the policy statement in § 1B1.13 of the Sentencing Guidelines. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). And because satisfying the § 1B1.13 policy statement is no longer a requirement for defendant-filed compassionate release motions, the policy statement's requirement that the defendant not be a danger to the community no longer provides an independent basis for denying compassionate release. *United States v. Hampton*, 985 F.3d 530, 533 (6th Cir. 2021). In other words, a district court may deny a defendant-filed motion only when it finds either that no

4

extraordinary and compelling reasons exist or that the § 3553(a) factors weigh against release. See *Elias*, 984 F.3d at 519.

*United States v. Greene*, No. 20-3848, 2021 WL 1016430, at *2 (6th Cir. Mar. 17, 2021).

Where, as here, an incarcerated person files a motion for compassionate release directly, the district court has full discretion to define and determine whether an "extraordinary and compelling" reasons exist without consulting the § 1B1.13 policy statement. *Elias*, No. 984 F.3d at 519-20 (citing *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020)). However, as this Court has previously stated, the policy statement may still provide a useful starting point to determine whether extraordinary and compelling reasons exist, because Congress provided no statutory definition of "extraordinary and compelling reasons" in section 3582(c)(1)(A). *Ruffin*, 978 F.3d at 1004. Instead, Congress directed the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Adkins*, No. 5:18-058-DCR, 2020 WL 7755629, at *1 (E.D. Ky. Dec. 29, 2020) (quoting 28 U.S.C. § 994(t)). Those descriptions are found in § 1B1.13 of the United States Sentencing Guidelines (policy statement) and the application notes to that section.

The policy statement describes four categories of extraordinary and compelling reasons. The first three relate to an inmate's serious medical conditions, age, and status as a caregiver. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). Specific medical conditions of a defendant constituting extraordinary and compelling reasons for a reduction in terms of imprisonment may include "terminal illness," "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process." *Id.* The application note to U.S.S.G. § 1B1.13 further provides that the age of a defendant may be a necessary and compelling reason for a reduction in terms of imprisonment when "[t]he defendant

(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* The last category is a catch-all provision titled "Other Reasons," which reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

Though the policy statement still provides a useful starting point to determine whether extraordinary and compelling reasons exist, the Court can and does look to other reasons when ruling on a motion for compassionate release. The present motion represents many filed by incarcerated persons around the country who have limited control of their environment, often cannot practice social distancing, and are concerned about contracting COVID-19. The Sixth Circuit acknowledged this concern and approved the following two-part test "for deciding when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release: (1) when the defendant is at a high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *Elias*, 984 F.3d at 520 (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020) (internal quotation marks omitted)).

### b.  Discussion

Under the First Step Act, a defendant may move for compassionate release on his own after the defendant "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *United States v. Pegram*, No. 20-1906, 2021 WL 499572, at *2 (6th Cir. Feb. 10,

2021). The parties do not dispute that Starks has exhausted his administrative remedies, so the Court proceeds to the merits.

Starks suffers from COPD and asthma, and he supports these diagnoses with BOP medical records. [*See, e.g.*, DN 36-1 at 14]. The Center for Disease Control and Prevention (CDC) recognizes that people with COPD are at increased risk of severe illness from coronavirus, and people with moderate-to-severe asthma might be an increased risk of severe illness from coronavirus.[2] The government did not respond to Starks's concerns about having COPD and asthma. Instead, the government focused on other medical issues Starks has been diagnosed with including hypertension and a sickle-cell disease. [DN 40 at 3-4]. While Starks does appear to suffer from various medical conditions that may place Starks at increased risk of severe illness from COVID-19 or do place Starks at increased risk of severe illness from COVID-19, Starks does not allege that he has requested specific medical treatment that has been denied, or that he has demonstrated a need for specific medical treatment and been denied needed medical care. At the most, Starks argues that he has not been able to access regular breathing treatments, and due to coronavirus protocols in the prison, he could not be transported anywhere for glaucoma surgery if the need were to arise. [DN 36 at 6; 17]. However, again, Starks does not claim that this has resulted in injury. The medical documentation Starks attaches to his motion indicates that at a chronic care clinic visit in June 2020, a physician examined Starks's pulmonary/respiratory conditions and although "peak flow not done due to Covid crisis on housing unit,"[3] "[o]n exam, [Starks's] respirations are non-labored and he has no complaints." [DN 36-1 at 14].

---

[2] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 24, 2021).
[3] The Court understands that "peak flow" refers to breathing treatments.

At the same time, the BOP is currently reporting only one (1) active case of coronavirus among the inmate population at FMC Lexington.[4] The BOP is also currently reporting that 583 of FMC Lexington's 1,150 total inmates have been vaccinated.[5] While recognizing the risks posed by Starks's medical conditions, the Court also weighs the current situation in Starks's facility, FMC Lexington. Considering the totality of the circumstances, Starks has not presented extraordinary and compelling circumstances that warrant release.

Because the Court determines that Starks has not presented extraordinary and compelling reasons for release, the Court need not consider the factors of 18 U.S.C. § 3553(a). *See Greene*, 2021 WL 1016430, at *2. As such, Starks's motion for compassionate release is denied. However, if conditions materially change, the Court will reconsider a new motion.

## IV.   Conclusion

For the reasons stated above:

1.   Starks Motion for Compassionate Release, DN 36, is **DENIED**.

2.   Starks's Motion for Default Judgment, DN 38, is **DENIED**.

**IT IS SO ORDERED**.

cc: counsel

Derrick Starks
19484-033
LEXINGTON
FEDERAL MEDICAL CENTER
Inmate Mail/Parcels
P.O. BOX 14500
LEXINGTON, KY 40512
PRO SE

**Thomas B. Russell, Senior Judge**
**United States District Court**

March 25, 2021

---

[4] *COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited March 24, 2021).
[5] *COVID-19 Vaccine Implementation*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited March 24, 2021); *FMC Lexington*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/lex/ / (last visited March 24, 2021).

8